We'll now hear arguments in the case of United States v. Channon. Matthew Channon. Good morning. May it please the court. My name is Kata Yuridani. I represent the appellant, Mr. Channon. It appears that the government should have filed a motion to seek a general order in this case. Instead, what they went forward with was a motion for money judgment, and that is the problem here. That is why we are here for the second time on the second appeal. I had the benefit of listening to the oral arguments in the first one. I know that Judge Kelly was on that panel, and the questions were asked. But because of the government's concessions, the court did not address the forfeiture issue. It was remanded, so the court could properly address that in light of my gut. So the language of the remand order said, we remand to conduct further proceedings on this issue. And I guess at this point, our question is, what was meant by this issue? I think that would be the question, actually, for the panel. There is a problem with the language of the remand, but that shouldn't be working against Mr. Channon. So how would you interpret it? If I was sitting there as a district court judge, I thank you for the promotion at this point. I would be reading it. I would read Hunnicutt, and I would apply Hunnicutt. So you'd read it broadly? Is that your point? I don't think it is a question of the scope. It is very clear, and the government's concession was that we were under the wrong impression all along that we thought we can just go have a general judgment without having to identify and list the tainted property. That was the problem in the first hearing. So you understand the remand to direct the district court to trace the property? Correct. So that was the issue that has been preserved from day one. Mr. Channon raised it, and one of the underlying issues is that the only thing that the government did, both during the trial and sentencing, was to try to connect the accounts that were created and the reward, which I'm guessing that some people in this room might have had the experience of going to Nordstrom Rack. You go in. You make the purchase. You get reward points that are translated into number. You get a $20 note. So what the government did was to try to trace that note, the number, and the number that they gave, which was $105,000 and such, was actually the store credit. That was nothing more than the store credit that was issued to the accounts. They didn't complete the job. They didn't then try to trace that further in and say, okay, the only time that that could become the property that was subject, and I would like to actually ‑‑ I know that the tortured history of this case might have prevented that to become clarified, having reviewed it yesterday. I think it's extremely important to note that the government conceded and actually had a superseding indictment acknowledging that the store credit itself could not be property for the purpose of wire fraud. Are you arguing that the amount of the judgment is not in question once it was remanded, that we're still looking at that same dollar amount and you have no contest about that amount? I'm saying the exact opposite. I thought you were, but it seemed to me you were narrowing it into the issue of tracing, and that's a different animal. So the tracing part is an important part of it because we had the issue, since the government did not go for a general order, what they claimed was that we know what these tainted properties are, which is not correct. And they have conceded that in their response, that we have not been able to trace and determine what actual merchandise or gift card, which were the two things that could happen, the only time that this could materialize, the reward could materialize, were if they were purchasing merchandise or gift cards. Okay? And that was not, that has happened. In the perfect world, the government- I'm sorry, I'm not following your argument. Sure. How can I help? Let's say that there was a $30 gift card involved. Right. Now, you're saying that they have to trace that back to what they sold the gift card for? No, Your Honor. Actually, and I understand that that became an issue of the value. That is a secondary issue. That's not even before the court now. I just don't understand your position. So I'm going to try to explain that again, which is when the Shannon's scheme, if you agree with the government's proposed scheme, is that they created- Well, we have a conviction, so I think it's time to agree. Yes, Your Honor. I understand there are some appeals going on, so for the purpose of the argument- There was nothing in the remand order to give the Shannon's a second shot at attacking the forfeiture as a whole on remand. Your Honor, the opinion in Shannon 1 did not address the issue of forfeiture and the arguments that the Shannon's have raised, which are the exact same arguments. Slow down a little bit. I apologize. I can't listen that fast. There were two paragraphs in Shannon 1 on forfeiture. There were what? There were two paragraphs in the opinion of the Tenth Circuit in Shannon 1 that addressed the issue of forfeiture. In the first paragraph, the court explained what the argument was that the Shannon's made, which is exactly what I'm raising again now. In the second one, they said because the government has conceded that they have been operating under the wrong impression and have not determined what the tainted property was, which is exactly what Ms. Mesnick conceded during the oral argument, that they have to show evidence- Remand to conform the money judgment to the requirements of the statute. Correct. Necessary. The reason for it was that they were asking for money judgment, even though they were not claiming that the money was the tainted property. Substitute property, isn't it? And they hadn't asked for that to be substitute property. So the problem remains that they had never explained what the tainted property was, either in Shannon 1 or now if you're in Shannon 2. So the tainted property, which could have only been two things, it couldn't have been the reward because the government specifically, if you look at the record from page 75 to 78, there's a huge discussion as to what is it that is the property that you're going after. And they acknowledge that under Cleveland, they would be in trouble because the credit in the store is not considered the property. So they're going to go with the easier approach, which is, we are going to call the merchandise and the gift cards, those are the property that could be tainted property under 853. So the rewards cannot be, the government has already conceded, and again, in their response, they conceded that point again. So you say there's only money or merchandise, and what was your other thing that they could claim? The gift cards. The gift cards, okay. Those are the only things. And that is the part of the work that was done. What about unredeemed reward credits? Unredeemed reward credits. So that was never claimed to be the property because that falls under the first category. They could have, but they didn't claim that. Correct. Under Cleveland, that was not clear, and they didn't want to take that risk. So that is the law of the case. That is the theory that the government ran with, and it has to abide by it. When you were back before the district court on remand, what did you tell the district court you wanted it to do? The public defender's office, and I apologize. Okay, so your predecessor in the case. My predecessor. They had asked for the same thing. They repeated the argument, which is. . . I mean, so I'm going to get back and look, and I'm going to find out that the things that we're talking about, in addition to the forfeiture amount that basically the public defender said, on remand, Judge. . . I think this was Judge Herrera. You're going to have to. . . We get a do-over because this new case came down. They're not going to be able to pursue certain things because they didn't pursue it right in the first place, and there's no joint and several liability. We want to discuss that with you, district court. Tell us about the joint and several. . . The joint and several liability part was not specifically mentioned, but. . . Okay, so let's talk about that. I mean, don't you have to ask on the joint and several liability part, at least? Didn't you have to ask the district court to deal with that? Well. . . Or your predecessor not throwing you under the bus for it? I think the bad news for the government is that it has the burden, and I think regardless of civil or criminal, the party that has the burden has to meet its burden. So you think that on remand the government had to say, it's our position, Judge, that all that's happening here is we're conforming our money judgment to the statute, but while we're here, in all candor you should know that we've also erroneously claimed that there's joint and several liability. I mean, they disagree with that. I would have done that as an officer of the court. I mean, doesn't the. . . Well, I mean, there's contrary case law. What about the Second Circuit's case, Judge Sullivan's case in SEC versus Amarindo, I think is the name of the case? I mean, these folks live together. There's an argument that there's a difference. Your Honor, I mean, I only have about five minutes. . . No, I understand. I guess what I'm getting at is it seems that we're in addition to the amount of the judgment, we're also talking about other things in the case that nobody ever brought up below. So the issue was that the joint and several liability was the issue in Honeycutt, right? So the case was remanded because of Honeycutt. One would think that when the case is remanded because of Honeycutt. Well, I mean, it was remanded because of a more, I mean, arguably a more narrow issue in Honeycutt. Well, but that was the problem, that the government came in and said, Hey, stop, let's not decide forfeiture. We're going to go back and we're going to fix this. Take our word for it. That's exactly what the government came and said. Take our word for it. Have it on the record. I think what they said was that they're going to go back and conform the money judgment to comply with Section 853P. And let's talk about that. Did they do that? They did not. In our opinion, cited to Honeycutt. So I think we have to look at Honeycutt. I mean, that was the reason for the remand. I mean, that was the whole purpose of this. Otherwise, that is a problem, that the court did not address all of these arguments in Shannon 1 because of the request for remand. And now that couldn't be. So for us now, it's really an issue of what is the scope of the mandate in the first appeal. Correct. But it's also important to note that because of the mandate, because of the language of the mandate, the court never addressed the merits of the arguments, the forfeiture arguments in 1. So it would be extremely unfair to say we are not going to address it now. Let's remand so the government can get the do-over, since this was a burden on the government, not on Mr. Channon. Well, assuming that's right. What, I mean, didn't your client receive the value that the government, I mean, arguably receive the value? It did not. That is a problem. What if you gave me a bunch of gift cards and merchandise? This is not a gift card. Perfect. We want that. And even store credits. That would be wonderful. And don't I get the, isn't that my value? So the store credit is not under Cleveland, and the government conceded that it cannot go that route. So it is bound now to focus itself on merchandise or gift cards. Okay. And the gift cards and merchandise were never traced back to the crime, and that is something that was completely doable. If they wanted to do that, the spreadsheets could continue. These are the accounts. This is the reward. This is the bar code. These hundred cards were issued that are connected to this. These are the number of 2,000 items that were purchased that are connected to this. The government cannot ask for carte blanche without having met its burden in forfeiture cases. Okay. Was your client's argument at a different point, or maybe even in this case, but at some point that, hey, we didn't get that much value? The value is not an issue right now. We are way above the value. We haven't identified the tainted property. So I cannot talk about value of a property that hasn't been identified. So your point is they get nothing because they've identified no property to forfeit. They will when they do. Well, restitution has been ordered, right? That is a separate issue that, unfortunately, is not on appeal. But I would actually, if it was, the value cannot be just the reward value. Right, right. But we're here on forfeiture. Yes, we are. Right. Thank you. May I reserve the rest of my time?  Thank you. Good morning again, and may it please the court, counsel Paige Messick for the United States. I think it may help if I take a moment to try to clarify the zone of disagreement between the parties here. Both of Matthew Tannen's briefs open by asserting that before the government can forfeit untainted money as substitute assets, there must be a hearing at which the government has to satisfy the requirements of 853P. We do not disagree with that. But that is not where this case is. What the government has right now is a money judgment. It does not have an order forfeiting any specific property, including money, of the Tannens. Well, how do you support a money judgment? Just because that's an easy route to take because you can't trace the property? The money judgment, as this court, I believe you, Judge Briscoe, explained to McGindy, represents the amount of unlawful proceeds the defendant received from the crime. The money judgment itself is essentially agnostic as to whether it will be satisfied by tainted, directly forfeitable assets, or by substitute assets. So the money judgment itself doesn't require tracing to particular property because the money judgment is just setting the amount as a placeholder, essentially, for subsequent enforcement efforts. There was a real bone of contention between the parties before in the first Tannen appeal as to whether the government could take that money judgment and use it without more to seize assets of the Tannens. Right, because that would not be a tracing. I mean, that would just be a pure enforcement of a judgment. And I understand that. And Honeycutt came out. And that's a gift. Certainly. Honeycutt came out and made clear that we can't do that. And we understand that now. And that is the reason that we conceded that issue and agreed to the limited remand on that issue. And on remand, because you said Honeycutt, can we now look at joint and several liability? Is that on the table for us? It's not on the table because the Tannens never raised any objection to them being held jointly and severally liable. They do not get the benefit of a Supreme Court case that comes down while their case is pending on appeal? Oh, they can have the benefit of it. But they actually have to bring it to the district court's attention, which they never did. In fact, if you look at the pleadings. Even after remand, they didn't say no joint and several? No, absolutely not. On remand, their pleadings refer to the gain to the Tannens and the Tannens' gain. They always threw it into this same bucket. They never asked the court, you have to separate out what I got and what she got. And had they done that, I submit they wouldn't have been able to make, they wouldn't have made any headway with that, because they were a married couple living together, committing the fraud together. And it is reasonable to assume that they shared jointly in the proceeds of their jointly undertaken criminal activity as a married couple. So I don't think that they could have made any difference there, but they never asked the court to do that. So they're on plain error now, where they have to show that there was, of course, error that was plain, but they also have to be able to show that the government couldn't have come back with any more evidence to defeat the claim that they're making now as to joint and several liability. And I would also say, I don't think the Tannens have the best reading of Honeycutt here. Honeycutt does not hold that two co-defendants cannot both receive the full proceeds of a fraud. Honeycutt is about joint and several liability as applied to vicarious liability for co-conspirators. That's not what happened with the Tannens. They weren't held vicariously liable for the others' gains. They were held jointly liable for their own shared gains. So I don't say that they can't have the benefit of Honeycutt, but they didn't raise that issue before the district court, and they can't satisfy plain error now, which they haven't even attempted to do. I mean, did they even suggest to us that we should review it for plain error? No, they have not, and this court would be entirely justified in declining to do that where they haven't faced their burden under plain error to make that showing. I mean, on remand, wasn't the whole presentation by the Tannens the position that the judgment was too high and that the court needed to hold a hearing because you hadn't proved that amount and that they couldn't be held? Your judgment couldn't be in the amount of money, a value that they may have taken from your or from the store. It was the amount they might have received for those items. Wasn't that the whole thrust of their request for a hearing? Yes, exactly. It was essentially more of what they argued in Channon 1, and they believed that those arguments were still on the table. They didn't raise new arguments at that point. It was the same things that they had raised below. Well, and wasn't that a legitimate thought? I mean, our opinion did not reach the merits of either issue. We just said, hey, government looks like they want to look at this again, so we're going to remand. The government didn't tell the district court that it had no discretion to consider these other issues. The government said, you can see what issue prompted the remand here. That is clear from the opinion. It was the government's concession.  So when you look on the opinion that we issued and talk about this issue, what were we talking about? I understood that, and I believe the best reading of the opinion, looking at the context of the case, is that this issue is the issue that the government submitted a 28-J letter on and that was discussed at oral argument, the issue about whether there needed to be a sentence or two added to the money judgment to make it clear that the government couldn't take that money judgment and seize assets without satisfying 853P. That's what I think this issue is. Now, again, we didn't tell the district court that it couldn't revisit other issues because while that was what prompted the remand, there wasn't any language, I agree, in the remand saying you can't go beyond that. And this court's general mandate rule allows the district court to exercise that discretion on remand. But being able to exercise that discretion to expand the scope also means that the district court does not have to expand the scope. If it has discretion not to expand the scope, it has discretion to keep the issue narrowed to what prompted the remand. And Judge Herrera did not abuse her discretion in this case by keeping those issues, keeping the proceedings on remand, narrowed to the issue that prompted it. Did the government use the procedures outlined in 853P? Oh, no, it didn't. We haven't tried to seize any substitute assets. We haven't identified substitute assets yet. So we haven't gotten to the point at which we would have that hearing. But if we, let's say someday, let's say someday we see that there's a bank account that they have that appears to be untainted funds and we would like to forfeit it as substitute assets, we would go into district court and we would attempt to make the showings under 853P there. The district court could enter an amended judgment under 32.2. And if the Channons believe that we have fallen short of our burden under 853, they may take a new appeal under Rule 32.2. But we haven't crossed that bridge yet. How do you justify the money judgment? How do you justify it? It is not money seized. It's not like stopping a bank robber and taking the bag of cash from him and saying, okay, there's $100,000 here. I want to make sure I understand the direction of the court's question. Are you asking how do we justify the money judgment of 106-191? What is the basis of it? How do you achieve it? As to the amount or just as to getting a money judgment in the? I'll go with both. Okay. Well, let me address first the basis for the money judgment in the amount of 105-191. That sum represents the proceeds, the total proceeds from the fraud. Because what the Channons got through the fraud was a sum of OfficeMax merchandise. Okay. Did the government not achieve that through restitution, that judgment? No. Well, restitution and forfeiture are. Because that's where you get the number, right? There's a strange link in this case. Because you're totaling up the credits, those credits that they obtained. I will say the government said that the restitution should be 105-191. We actually got restitution for about $10,000 less than that. I can't quite explain why that was. Which sort of makes my point. It appears to be double dipping? Or is this a penalty? It's not double. Forfeiture and restitution serve different purposes, as the court explained in McGinty. So there's no double dipping. OfficeMax gets its loss restored to it through restitution. The government seizes the proceeds through forfeiture. There's actually a procedure under which DOJ will restore the amounts that it The government doesn't collect twice. But they are separate awards. And they can be for separate amounts, as they are in this case. Although our position here is that they don't have to be separate amounts. It's quite possible, as it was here, for loss and gain. Restitution and forfeiture. To lead to the same amount. And that's because everything. Let's just say that the store got back $105,191. That is restitution. That is full restitution. What would the government have to do to get forfeiture? And how much would they seek? I'm not sure that I understand. He's talking about the double dipping, I think. So if there's full restitution paid, what's the government going after in forfeiture? If any. If there were. What normally happens here is we would attempt to collect the forfeiture. And then give that to the victim in restitution. There's not really. I think it would be unusual for restitution to be paid. And then for us to go and attempt to collect on forfeiture. Because we don't try to get, essentially, that same amount. Well, how much did the victim get back in this case? What's that? How much did the victim get back in this case? The victim hasn't gotten anything back in this case. I thought you said they got over $10,000 back. No. No. The restitution award was actually less than the forfeiture award. So there's a judgment. And you're cutting the line as to whether or not the judgment's been paid. When Judge Kelly asks about how much money did they get back. They've gotten. You say nothing because the defendant hasn't paid anything. That's right. But there is a judgment, right? That's right. But they got back the items that were still in the defendant's possession. Well, they haven't gotten those back. Because those are still held in evidence. Because the Channons are still pursuing the 2255. How much is held in evidence? It's not a lot. It is assorted office supplies and assorted gift cards. But I've been there to see all of it. I would estimate it's probably maybe $2,000 or $3,000. It's not a large percentage of the total. We found very little. Almost all of it had already been sold, used, hidden, and we don't know exactly what. So we agree that the amount of the forfeiture is the amount that Channons profited, right? Not the amount that Office Masks lost, but the amounts that the Channons profited. And I think the word profit was directly taken from McGinty. So it's what the Channons gained. But, in fact, the forfeiture statute 981 says that forfeiture is not limited to net proceeds or profits. And so we're not asking how much cash the Channons ended up with after they sold this merchandise on the gray market. All right, yeah, because your position is if they received $105,000 in value and they chose to liquidate it in a way where they reduced that amount, they still received the higher amount. That's on them. Let me ask you a different question. What if the Channons got on eBay and sold all that stuff for $200,000? How much would you want to forfeit? In that case, the proceeds of the offense would have grown to $200,000. That's just baked into the definition of proceeds, right? So if you happen to invest your proceeds well and that, you know, gains you a lot of money on the stock market, that also becomes proceeds. That's just how the statute defines proceeds. I mean, that sort of gets you into a hedge you win, tails they lose situation. I mean, if in that case, I mean, there's just never a way to distinguish it. Well, I think that I see the court's point, but the forfeiture statute holds a defendant liable for dissipation of the value of what they gain from an offense. So if it goes down, they're still liable for that top dollar. But the forfeiture statute also takes into account proceeds that, well, proceed from other proceeds, right? So again, if you invest and it goes higher or if you manage to sell it for more than it was worth at the time you got it, the forfeiture statute captures that too. So was the $105,000 calculated based on OfficeMax's cost or the market value of what the Channons received? It was calculated on the market value because that's what OfficeMax would have demanded from any customer for that same set of merchandise. That also forfeiture merely has to be a reasonable estimate of the gain. The Channons have not objected to $105,191 as clearly erroneous as an estimate of the value at that point. They just believe it should be calculated at a point downstream where they've dissipated some of the value. I see that I'm out of time. Thank you. The problem is that there was no market value determination. You look at this record, the only thing that the government proposed, and I read from the transcript of the sentencing hearing on the forfeiture piece. This is page 20, sorry, DNM 2289, lines 14 to 18. What the description of what the $105,191 is, is that the Channon. So what did you come up with? The grand total of Max Brooks rewards that were fraudulent, acquired by the Channons, and then redeemed at the OfficeMax. That is the number. This was not the market value. This was just the store credit. That is the problem. The government never connected the store credit, which does not have a market value, to the merchandise. If we got to the merchandise, then we would have the discussion as to what is the market value, are you asking for it, the proceeds to inflate, and you get it. But if it deflates, you don't get any of it, and that proves the point that the government is using conflating loss and gain, and that is in direct violation of Honeycutt. Let me ask you this. You're talking about store credit. Was the store credit ever used by anybody? We don't know. We are asking the government, please give us your proof. Who used it? They had never connected Mr. Channon personally, which is a must under Honeycutt, to who used it, what was it used for. That is what we have been begging this court to pay attention to in Channon 1 and now in Channon 2. The government has still the burden to say what is the tainted property, what is the list, identify them. These are barcodes. This is not a store that doesn't have the system in place. There are barcodes for everything that happens in OfficeMax. The government has not, and now these allegations that there is a market value. You look at this record. Throughout the trial and to this day, there has never been a calculation of a market value for anything because first they would have to say what Mr. Channon actually obtained under Honeycutt, obtained. Well, is it your position that if the city got caught before the store credits were used, the store credits could be canceled? And actually, in fact, what was the policy of OfficeMax is that if you didn't use the store credit in a particular amount of time, it would be all canceled. It had no value unless it was redeemed within that period, and we don't know who redeemed it. That is the government's burden. They're going for forfeiture. This is asking for a U.S. citizen's property. They have to meet their burden. Well, it's for restitution. No, it is for forfeiture. Well, it's restitution and or forfeiture. So that is the problem, right? Under the loss analysis of restitution, which is still, I mean, unfortunately we don't have this issue. I would have loved to argue that piece that you still have to show what was the market value of that item. We know that you go to a restaurant, they sell you the bottle of wine three times the price. Well, the government says they haven't even gotten to the A53B yet. Exactly. They haven't gone anywhere. So what are we doing here? That is a good question. What are we doing here? You filed the appeal. Well, the question is that we filed the appeal because the government didn't meet this burden and it's asking, it has received a judgment, a money judgment on something that it has not met its burden. We have your argument. Thank you. Actually, may I add just one point, Your Honor? You're out of time. You're out of time. I understand the plain error piece. We raised it. It is in our brief. That's okay. You're out of time. Thank you. Your Honor, may I have 20 seconds to correct the factual issue? She went over two minutes, so go ahead. Ms. Donnelly just said that the United States did not prove that these rewards credits were redeemed. That's not true. All of that 105-191 was redeemed credit, and in fact, we proved, and you can find it in the first Channon record, that the Channons personally redeemed all of that except for $2,302 that they sold to other people who then redeemed them for a value of $1,968. You can find that in the second volume of the Channon record on appeal in the first case at page 875. Thank you. All right. Thank you both for your arguments. I'm glad you care so deeply about your cases. It's refreshing. Thank you. Our next case.